## In re PREMONT INDEPENDENT SCHOOL DISTRICT.

### No. 04–06–00810–CV.

Court of Appeals of Texas, San Antonio.

Feb. 7, 2007.

Rehearing Overruled Feb. 23, 2007.

David P. Hansen, Mark H. Benavides, Schwartz & Eichelbaum, P.C., Austin, for appellant.

Richard J. Hatch, Branscomb, PC, Will W. Pierson, Scott R. Taylor, Royston, Rayzor, Vickery & Williams, L.L.P., Corpus Christi, Robert L. Guerra, Vaughan E. Waters, Thornton, Biechlin, Segrato, Reynolds & Guerra, L.C., Daniel G. Gurwitz, Atlas & Hall, L.L.P., McAllen, Roy L. White, Shaddox, Compere, Walraven & Good, P.C., San Antonio, Randall Rives, R&W Valley Construction, La Blanca, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

## BACKGROUND

In 1999 and 2000, Premont Independent School District ("PISD") entered into contracts with Braselton Construction Company ("BCC") for renovations and additions to the Premont Elementary, Junior High School, and High School ("the Project"). Ashley, Humphries & Sanchez ("AHS") was the Project architect. In August 2001, PISD believed the Project would not be completed on time and to its satisfaction, and it retained a construction management company to assist with the administration of the Project. When the Project was finally completed, it was over-budget and allegedly deficient in terms of scope and quality.

On August 29, 2003, PISD filed suit against AHS and BCC. On October 9, 2003, AHS answered and requested a jury trial. On November 7, 2003, BCC answered and counterclaimed against PISD. Substantial discovery, including depositions, was conducted and numerous motions filed. A trial date was set for August 1, 2005. Following BCC's motion for continuance, trial was reset to July 31, 2006 and again to August 7, 2006. On November 16, 2005, BCC filed its third-party action against Metro Electric, and, on January 5, 2006, it filed a third-party action against R & W Valley Construction.

On June 5, 2006, BCC asserted a contractual right to demand arbitration and filed a motion to compel arbitration. On June 9, 2006, AHS filed a cross-action against BCC. On June 21, 2006, the parties agreed to mediation, which ultimately failed. On June 29, 2006, the trial court heard the motion to compel arbitration. The trial court ordered all parties, not just BCC and PISD, to arbitration. On July 25, 2006, AHS filed a motion joining BCC's request for an order compelling arbitration.[2] On September 1, 2006, PISD's motion to reconsider was denied.

On November 22, 2006, PISD filed its petition for writ of mandamus. PISD asserts: (1) no agreement to arbitrate exists between the parties or, alternatively, (2) BCC waited too long to assert its right to

---

2. AHS joined BCC's argument that arbitration should be compelled pursuant to the agreement between PISD and BCC. PISD and AHS entered into a separate contract entitled "Standard Form of Agreement Between Owner and Architect With Standard Form of Architect's Services." This standard form contract contained an arbitration clause; however, in their agreement, PISD and AHS deleted the arbitration clause in its entirety by striking through the language.

arbitration, and (3) the trial court erred in ordering all parties to arbitration, rather than only PISD and BCC.

## DOES THIS COURT HAVE JURISDICTION OVER THIS MANDAMUS PROCEEDING?

As a preliminary matter, we first address BCC's motion to dismiss this mandamus proceeding for lack of jurisdiction on the grounds there is no mandamus relief from the granting of a motion to compel arbitration.

Whether mandamus is the appropriate avenue for relief depends on whether the arbitration agreement is governed by the Federal Arbitration Act ("the FAA") or the Texas General Arbitration Act ("the TGAA").[3] Under the FAA, the denial of a motion to compel arbitration can be reviewed by mandamus because there is no adequate remedy by appeal. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994); *In re Medallion, Ltd.*, 70 S.W.3d 284, 287 (Tex.App.-San Antonio 2002, orig. proceeding). Under the TGAA, a trial court's order denying arbitration is reviewable only by interlocutory appeal. *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 497 (Tex.App.-San Antonio 2000, orig. proceeding).

However, the Texas Supreme Court has recently addressed whether a Texas court may review, by mandamus, an order *granting* arbitration under the FAA. *See In re Palacios*, 221 S.W.3d 564 (Tex.2006) (orig. proceeding). The Court noted that the U.S. Supreme Court has "held that the FAA allows review of such orders only if the underlying case is dismissed; if it is merely stayed . . . , there can be no review until final judgment." *Id.* at 565 (citing *Green Tree Fin. Corp. v. Randolph*, 531

U.S. 79, 87 n. 2, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). The Court "recognize[d] there is some one-sidedness in reviewing only orders that deny arbitration, but not orders that compel it. Yet both the Federal and Texas acts leave little uncertainty that this is precisely what the respective legislatures intended." *Id.* at 566. But the Court stopped short of holding that mandamus review of an order staying a case for arbitration is entirely precluded. *Id.* at 566. Instead, the Court noted that even after *Green Tree*, such mandamus review may still be available if the party seeking mandamus relief from an order staying a case for arbitration meets a " 'particularly heavy' " burden to show " 'clearly and indisputably that the district court did not have the discretion to stay the proceedings pending arbitration.' " *Id.* (quoting *Apache Bohai Corp. v. Texaco China, B.V.*, 330 F.3d 307, 310–11 (5th Cir.2003)). Therefore, here, we first consider the merits of the petition, rather than outright dismissing the petition. If PISD met its heavy burden to show an indisputable abuse of discretion, we have jurisdiction. *See In re Ivins*, No. 09–06–00249–CV, 2006 WL 2075192, at *1 (Tex.App.-Beaumont July 27, 2006, orig. proceeding) (holding same); *In re Great Western Drilling, Ltd.*, 211 S.W.3d 828, 833 (Tex.App.-Eastland, 2006, orig. proceeding) (stating the "analysis [in *Palacios* ] suggests that mandamus relief was possible if the relator had satisfied this heightened burden of proof."). *But cf. In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 895 n. 4 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding) (recognizing limited exception in *Palacios*, dismissing for lack of jurisdiction under *Palacios*, but noting as an aside there was no showing of error). If we ultimately con-

---

**3.** PISD asserts the arbitration agreement at issue here is governed by the FAA. AHS asserts the agreement is governed by both the FAA and the TGAA.

clude the trial court did not abuse its discretion, we will dismiss the petition.

## DOES A VALID AGREEMENT TO ARBITRATE EXIST AS BE-TWEEN PISD AND BCC?

■■■ A valid agreement to arbitrate must exist between the parties. *See Belmont Constructors, Inc. v. Lyondell Petrochemical Co.,* 896 S.W.2d 352, 356 (Tex. App.-Houston [1st Dist.] 1995, no writ) (FAA); *see also Freis,* 877 S.W.2d at 284 (TGAA). Unless a party clearly agreed to arbitrate and be bound by the arbitrator's decision, courts do not compel arbitration. *Freis,* 877 S.W.2d at 284. A trial court's determination of an arbitration agreement's validity is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003).

■■■ Although a strong presumption favoring arbitration exists, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *Webster,* 128 S.W.3d at 227. Under both the FAA and the TGAA, we apply state contract law in deciding whether a party agreed to be bound to an arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *In re Alamo Lumber Co.,* 23 S.W.3d 577, 579 (Tex.App.-San Antonio 2000, orig. proceeding). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Webster,* 128 S.W.3d at 229. No single provision taken alone will be given controlling effect. *Id.*

■■■ Here, BCC and PISD entered into a standard contract, known as the A121 and entitled "Standard Form of Agreement Between Owner and Con-

struction Manager." The A121 Standard Form incorporates by reference the A201 General Conditions of the Contract for Construction. Additional Supplementary Conditions are contained in two Project Manuals.[4] The first paragraph of the Supplementary Conditions states:

THE GENERAL CONDITIONS OF THIS CONTRACT is The American Institute of Architects Standard Document No. A201. GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION, 1987 Edition, hereinafter referred to as the GENERAL CONDITIONS, which document is hereby specifically made a part of the Contract Documents with the same force and effect as though set forth in full.

The General Conditions provide the arbitration clause on which the defendants rely: "[A]ny controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration...." However, the Supplementary Conditions contain the following paragraphs relevant to this mandamus proceeding:

1.1 BASIC DEFINITIONS

The following supplements modify the GENERAL CONDITIONS. Where a portion of the GENERAL CONDITIONS is modified or deleted by these SUPPLEMENTARY CONDITIONS, the unaltered portions of the GENERAL CONDITIONS shall remain in effect.

· · ·

4.5 ARBITRATION

Delete this section in its entirety.

According to PISD, paragraph 4.5 of the Supplementary Conditions deleted the arbitration provision upon which defendants

---

4. The General Conditions state that the "Project Manual is the volume usually assembled for the Work which may include the bidding requirements, sample forms, Conditions of the Contract and Specifications."

rely. Therefore, PISD concludes, because the Supplementary Conditions modify the General Conditions to delete the arbitration clause contained in the General Conditions, the trial court abused its discretion in compelling arbitration. BCC counters that because the Supplementary Conditions are not signed, the so-called "modification" is invalid. BCC phrases the issue as whether "the clauses in the Contract can be modified and when is such a modification effective?"

■ Although only the A121 Standard Form is signed by the parties, "[i]nnumerable contracts are consummated every day in Texas that incorporate other documents by reference." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex.2006).[5] "[A]rbitration-related language is no exception to this rule." *Id.* Thus, an arbitration agreement that is not signed may be incorporated by reference in the signed contract. *Teal Constr. Co. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex.App.-Austin 2001, pet. denied). Likewise, an agreement to not arbitrate that is not signed may be incorporated by reference in the signed document. The Supplementary Conditions are considered a "Contract Document" incorporated by reference in the General Conditions. Thus, we next consider whether any provision of the parties' agreement requires the clause in the Supplementary Conditions deleting the arbitration language contained in the General Conditions to be signed.

The General Conditions state that the "Contract Documents must be signed by the Owner and Contractor as provided in the [A121 Standard Form] Agreement." No clause in the A121 Standard Form requires that the General Conditions or the Supplementary Conditions be signed.

The General Conditions define the "Contract" as follows:

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. . . .

The General Conditions also define the "Contract Documents" as follows:

The Contract Documents consist of the Agreement Between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, *Supplementary* and other Conditions), Drawings, Specifications, addenda issued prior to execution of the Contract, other documents listed in the Agreement *and Modifications* issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. [Emphasis added.]

The first sentence of the above paragraph lists the various documents that comprise the "Contract Documents," which in turn comprise the "Contract." The list is connected by commas and conjunctions, consistent with other serial lists. Under this construction, the General Conditions are considered a separate document from the Supplementary Conditions, which are each considered separate documents from Drawings, Specifications, and Modifications. We conclude that, under the clear language of the General Conditions, only Modifications must be written and signed

---

**5.** The *D. Wilson Construction* Court considered the same documents at issue in this appeal, and held that "[a] contractual term is not rendered invalid merely because it exists in a document incorporated by reference." *In re D. Wilson Constr. Co.*, 196 S.W.3d at 781.

in order to "modify" any other Contract Document.

Having concluded the Supplementary Conditions are incorporated by reference in the General Conditions, and that nothing in the parties' agreement requires the Supplementary Conditions to be signed, the final issue is whether the Supplementary Conditions unambiguously signal the parties' intent to remove arbitration as a means of resolving disputes.

The A121 Standard Form provides for dispute resolution during both the preconstruction phase and the construction phase. Article 9 of the A121 Standard Form governs disputes arising during the construction phase and provides as follows:

> Any other claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof shall be settled in accordance with Article 4 of AIA Document A201, except that in addition to and prior to arbitration, the parties shall endeavor to settle disputes by mediation. . . .

Article 4 of AIA Document A201 (the General Conditions) requires that "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration. . . ." Thus, standing alone, under the A121 Standard Form and the General Conditions, the parties here would be required to arbitrate their dispute. However, the A121 Standard Form and the General Conditions do not stand alone. The Supplementary Conditions are incorporated by reference and considered a Contract Document. The Supplementary Conditions specifically delete section 4.5 of Article 4 of the General Conditions "in its entirety." The Texas Supreme Court, in considering these same documents although in a different context, noted that "[c]learly, the parties were free to delete and replace language in the General Conditions with language in the Supplementary Conditions, and they had done so elsewhere." *In re D. Wilson Constr.*, 196 S.W.3d at 782 n. 6.[6] Here, the parties deleted language in the General Conditions with language in the Supplementary Conditions. "[Section 4.5] of the General Conditions created the parties' right to arbitrate disputes, and represented their general agreement to do so. When this section was deleted by the Additional Supplementary Conditions, the right of the parties to arbitrate disputes was also eliminated." *Glenn H. Johnson Constr. Co. v. Bd. of Educ.*, 245 Ill.App.3d 18, 185 Ill.Dec. 74, 614 N.E.2d 208, 211–13 (1993) (considering the same documents and the same issue as here, and holding, "It is to us quite clear that in deleting section 4.5.1 from the contract, the parties were communicating their intent to eliminate arbitration as a means of resolving their disputes.").[7]

We conclude the unambiguous language in the Supplementary Conditions leaves no doubt that there is no arbitration agreement for these parties to enforce. Therefore, PISD has met its "particularly heavy" burden to show "clearly and indisputably that the district court did not have the discretion to stay the proceedings

---

**6.** In *In re D. Wilson Construction*, the Court considered whether the arbitration clause in the A201 could be reconciled with the arbitration clause in the Supplementary Conditions, which, unlike here, provided for arbitration of claims arising from the contract. 196 S.W.3d at 782. The Court noted that, while the scope of the arbitration clause in the Supplementary Conditions was narrower than that in the General Conditions, the arbitration clauses could be reconciled and were not ambiguous. *Id.*

**7.** *Accord Davidson County v. Ground Improvement Techniques, Inc.*, 83 F.3d 414, 1996 WL 195512, at *3 (4th Cir. Apr.24, 1996) (not designated for publication) (holding that because Supplementary Conditions "expressly

pending arbitration." *In re Palacios*, 221 S.W.3d at 565. For this reason, we need not address PISD's remaining issues. Accordingly, the writ is CONDITIONALLY GRANTED. TEX.R.APP. P. 52.8(c). The Honorable Richard Terrell is ORDERED to withdraw his Order Granting Motion to Compel Contractual Arbitration and Abatement of Suit Pending Arbitration, dated July 18, 2006. If he does not do so within ten days of this order, we will issue the writ.

deleted" the Dispute Resolution Agreement, "the parties' intent was clear-they expressly chose *not* to arbitrate"); *Chianelli Constr. Co. v. Town of Durham*, No. 550321, 1999 WL 487567, at *2 (Conn. July 2, 1999) (not designated for publication) (holding that because Supplementary Conditions deleted section 4.5 of General Conditions, the "contract as a whole does not 'clearly manifest' the parties' intent to provide arbitration as a dispute mechanism"); *Phoenix Contracting, Inc. v.*

*John M. Olson Co.*, No. 220681, 225146, 2001 WL 1585067, at *10 (Mich.Ct.App.Dc.11, 2001) (not designated for publication) (holding that because the Supplementary Conditions deleted section 4.5 of the General Conditions, the "boilerplate arbitration language appearing in subsection 4.5 or any other place in the general conditions no longer has any effect and are 'not part of the Contract' ").