In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00040-CR


______________________________




THE STATE OF TEXAS, Appellant



V.



CODY JOE POSEY, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 20830




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 The State appeals the trial court's order granting Cody Joe Posey's motion for shock
community supervision. Upon original conviction, Posey was convicted of two counts of criminally
negligent homicide. Both the State and Posey consolidated the causes for briefing purposes. 
Because the briefs and arguments raised therein are identical in both causes, for the reasons stated
in State v. Posey, cause number 06-09-00039-CR, we likewise resolve the issues in the instant
appeal, cause number 06-09-00040-CR. 

 In sum, we conclude that the affirmative deadly weapon finding rendered Posey not
"otherwise eligible for community supervision under [Article 42.12]." See Tex. Code Crim. Proc.
Ann. art. 42.12, § 6 (Vernon Supp. 2008). In light of the deadly weapon finding, Section 3g(a)(2)
would have prevented the trial court from ordering community supervision. Since Section 6(a)(1)
refers to "this article," it encompasses Section 3g(a)(2)'s limitation on court-ordered community
supervision. The trial court, then, erred by concluding that Posey was "otherwise eligible" for
community supervision under Article 42.12 and, therefore, should not have ordered shock
community supervision.

 As the written judgment stands, it reflects the proper sentence. To the extent that Posey
invites this Court to reform the written judgment to reflect the illegal orally-pronounced twenty-two-month sentence, we decline. The trial court was not authorized to reduce the sentence to a term that
fell below the applicable range of punishment. We cannot and will not endorse the unenforceable
oral pronouncement of an illegal sentence. We vacate the trial court's order granting shock
community supervision, reinstate the November 21, 2008, judgment revoking Posey's community
supervision and sentencing him to two years' confinement, and remand the case to the trial court with
specific instructions to carry out the two-year sentence reflected in the written judgment. 




 Jack Carter

 Justice


Date Submitted: September 16, 2009

Date Decided: October 20, 2009


Do Not Publish



ily: CG Times">II. The Arbitration Clause Was Part of the Contract

 The first issue with which we are presented is whether the contract, as agreed to by the
parties, contains an arbitration clause. Coyner argues the trial court did not abuse its discretion in
denying the motion to arbitrate because Coyner never agreed to the arbitration clause. 

 The contract contains an arbitration provision whereby the parties agreed to arbitrate all
disputes and claims arising from the contract. The arbitration provision provides as follows in
pertinent part:

 Except as explained below, you and we understand and agree that all disputes, claims
or controversies arising from or relating to this Contract (whether under case law,
statutory law, or any other laws including, but not limited to, all contract, tort and
property disputes) shall be resolved by binding arbitration ("Arbitration").


 . . . .

 EXCEPTION TO ARBITRATION: Even though you and we agree to arbitration, we
may use judicial (filing a lawsuit) or non-judicial relief to enforce our security
interest, or to otherwise collect the balance due on the Contract. We may begin a
lawsuit to enforce our security interest, or to obtain a monetary judgment, without
waiving your right or our right to compel Arbitration of any other dispute or remedy. 
Including the filing of a counterclaim by you in a lawsuit brought by us.

 "A party seeking to compel arbitration must establish the existence of a valid arbitration
agreement and show that the claims in dispute fall within the scope of that agreement." In re Bath
Junkie Franchise, Inc., 246 S.W.3d 356, 363 (Tex. App.--Beaumont 2008, orig. proceeding). 
Arbitration cannot be compelled without an agreement to arbitrate. Valero Energy Corp. v. Teco
Pipeline Co., 2 S.W.3d 576, 586 (Tex. App.--Houston [14th Dist.] 1999, no pet.). When
determining whether the parties agreed to an arbitration provision subject to the FAA, we apply
state-law principles governing the formation of contracts. In re Palm Harbor Homes, Inc., 195
S.W.3d 672, 676 (Tex. 2006); In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 738 (Tex. 2005);
Bath Junkie, 246 S.W.3d at 363; see First Options v. Kaplan, 514 U.S. 938, 944 (1995). When
interpreting a contract, our primary objective is to ascertain and give effect to the intent of the parties
as expressed in the contract. Seagull Energy E&P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345
(Tex. 2006). "Unless a party clearly agreed to arbitrate and be bound by the arbitrator's decision,
courts do not compel arbitration." In re Premont Indep. Sch. Dist., 225 S.W.3d 329, 333 (Tex.
App.--San Antonio 2007, orig. proceeding).

 We will interpret the terms of the contract based on "the plain, ordinary and generally
accepted meaning attributed to the term or word." Pratt-Shaw v. Pilgrim's Pride Corp., 122 S.W.3d
825, 833 (Tex. App.--Dallas 2003, pet. denied). If a written instrument's text can be given a definite
legal meaning, the contract is not ambiguous and must be construed as a matter of law. Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983). If the language of a contract is subject to two or more
reasonable interpretations, it is ambiguous. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI
Indus., Inc., 907 S.W.2d 517 (Tex. 1995); see Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154,
157 (Tex. 2003). Whether a contract is ambiguous is a question of law for the court. Heritage Res.,
Inc. v. NationsBank, 939 S.W.2d 118 (Tex. 1996). Neither party argues the contract is ambiguous.

 Parties  form  a  binding  contract  when  the  following  elements  are
present:  (1) an offer, (2) an acceptance in strict compliance with the terms of the
offer, (3) a meeting of the minds, (4) each party's consent to the terms, and
(5) execution and delivery of the contract with the intent that it be mutual and
binding. 


KW Constr. v. Stephens & Sons Concrete Contrs., Inc., 165 S.W.3d 874, 883 (Tex.
App.--Texarkana 2005, pet. denied); Buxani v. Nussbaum, 940 S.W.2d 350, 352 (Tex. App.--San
Antonio 1997, no writ). Coyner essentially argues because he was not aware of the arbitration
clause, there was not a meeting of the minds and an acceptance in strict compliance with the terms
of the offer.

 A unilateral mistake will not normally void a contract. See Johnson v. Conner, 260 S.W.3d
575, 581 (Tex. App.--Tyler 2008, no pet.); Ledig v. Duke Energy Corp., 193 S.W.3d 167, 175 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). Equity may permit rescission based on a unilateral
mistake only when 

 (1) the mistake is of so great a consequence that to enforce the contract would be
unconscionable; (2) the mistake relates to a material feature of the contract; (3) the
mistake occurred despite ordinary care; and (4) the parties can be placed in status
quo, i.e., the rescission must not prejudice the other party except for the loss of the
bargain.


Cigna Ins. Co. v. Rubalcada, 960 S.W.2d 408, 412 (Tex. App.--Houston [1st Dist.] 1998, no pet.). 
Coyner has failed to establish that his unilateral mistake permits rescission of the contract.

 Under the general rule, every person who has the capacity to enter into a contract is held to
know what words were used in the contract, to know their meaning, and to understand their legal
effect. Indem. Ins. Co. of N. Am. v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553, 556
(1937); Amouri v. Sw. Toyota, Inc., 20 S.W.3d 165, 169 (Tex. App.--Texarkana 2000, pet. denied). 
The arbitration provision was clear and unambiguous and subject to Coyner's review before signing. 
The parties to a contract have an obligation to protect themselves by reading what they sign. 
Cendant Mobility Servs. Corp. v. Falconer, 135 S.W.3d 349, 354 (Tex. App.--Texarkana 2004, no
pet.). Unless one party's false representations about the contract's content induced another party to
contract, the parties may not excuse themselves from the consequences of failing to read the contract
in its entirety. Id. at 354; Amouri, 20 S.W.3d at 169; see Palm Harbor Homes, Inc., 195 S.W.3d at
676. 

 There is no allegation that the relator committed fraud or made false representations
concerning the contract's content. Coyner's failure to read the contract does not modify the terms of
the contract. Green Tree established the existence of a valid arbitration agreement, and Coyner does
not contest that the claims in dispute fall within the scope of the arbitration agreement. 

III. The Agreement Is Governed by the FAA

 Arbitration clauses may be enforced under Texas common law, the Texas Arbitration Act,
or the FAA. With a few exceptions not applicable to this proceeding, the FAA applies to all
contracts "evidencing a transaction involving commerce." Jack B. Anglin Co. v. Tipps, 842 S.W.2d
266, 269-70 (Tex. 1992). The FAA "preempts state statutes to the extent they are inconsistent with
that Act." Id. at 272. The FAA defines "commerce" as:

 commerce among the several States or with foreign nations, or in any Territory of the
United States or in the District of Columbia, or between any such Territory and
another, or between any such Territory and any State or foreign nation, or between
the District of Columbia and any State or Territory or foreign nation, but nothing
herein contained shall apply to contracts of employment of seamen, railroad
employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C.S. § 1 (LEXIS 2008). Because Congress intended the FAA to extend jurisdiction to the
maximum extent permissible under the Commerce Clause, the FAA applies to written arbitration
provisions in contracts evidencing a transaction that "substantially affects" interstate commerce. See 
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 754 (Tex. 2001); In re Turner Bros. Trucking Co., 8
S.W.3d 370, 375 (Tex. App.--Texarkana 1999, orig. proceeding).

 In this case, the parties are from different states and the contract involves interstate transfer
of goods. Green Tree is a Delaware Corporation with its home office located in St. Paul, Minnesota. 
United Companies was, at the time of the contract, located in Minneapolis, Minnesota. (3) Payments
under the contract were required to be tendered to a post office box in Atlanta, Georgia. Further,
the contract states it is "made pursuant to a transaction in interstate commerce and shall be governed
by the Federal Arbitration Act." We conclude that the contract relates to a transaction substantially
affecting interstate commerce and is subject to the FAA. 

IV. Mandamus Is an Available Remedy

 Mandamus issues only when the mandamus record establishes 1) a clear abuse of discretion
or the violation of a duty imposed by law and 2) the absence of a clear and adequate remedy at law. 
Cantu v. Longoria, 878 S.W.2d 131 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992). Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of
discretion or, in the absence of another statutory remedy, when the trial court fails to observe a
mandatory statutory provision conferring a right or forbidding a particular action. Abor v. Black, 695
S.W.2d 564, 567 (Tex. 1985).

 A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law." Walker, 827 S.W.2d at 839. With
respect to the resolution of factual issues or matters committed to the trial court's discretion, the
reviewing court may not substitute its judgment for the trial court. Brady v. Fourteenth Court of
Appeals, 795 S.W.2d 712, 714 (Tex. 1990). However, "[a] trial court has no 'discretion' in
determining what the law is or applying the law to the facts." Huie v. DeShazo, 922 S.W.2d 920,
927-28 (Tex. 1996); see In re Jorden, 249 S.W.3d 416, 424 (Tex. 2008). Therefore, an erroneous
legal conclusion by the trial court constitutes an abuse of discretion. Huie, 922 S.W.2d at 927-28.
A clear failure by the trial court to apply the law correctly is an abuse of discretion. Walker, 827
S.W.2d at 840. 

 In recent years, the Texas Supreme Court has adopted a balancing test to determine whether
a party has an adequate remedy by appeal. See In re Prudential Ins. Co. of Am., 148 S.W.3d 124,
136 (Tex. 2004); see In re AIU Ins. Co., 148 S.W.3d 109, 115 (Tex. 2004). Under this balancing
test, a remedy available on direct appeal is adequate when the detriments of mandamus review
outweigh the benefits. Prudential Ins. Co., 148 S.W.3d at 136. If the benefits of mandamus review
outweigh the detriments, the appellate court must determine whether the remedy by appeal is
adequate. Id. The Texas Supreme Court reasoned: 

 The operative word, "adequate," has no comprehensive definition; it is simply a
proxy for the careful balance of jurisprudential considerations that determine when
appellate courts will use original mandamus proceedings to review the actions of
lower courts. . . . An appellate remedy is "adequate" when any benefits to mandamus
review are outweighed by the detriments.

Id. The Texas Supreme Court stated, "whether an appellate remedy is 'adequate' so as to preclude
mandamus review depends heavily on the circumstances presented and is better guided by general
principles than by simple rules." Id. at 137. The Texas Supreme Court, however, still emphasized
mandamus review should be limited to "exceptional cases" only to prevent impairment of 
"important substantive and procedural rights." Id. at 136; cf. In re Union Pac. Res. Co., 969 S.W.2d
427, 428 (Tex. 1998) (incidental errors not subject to mandamus review). (4) 

 Even prior to Prudential, the Texas Supreme Court held that a party, erroneously denied the
right to arbitrate under the FAA, had no adequate remedy on appeal. See Tipps, 842 S.W.2d at
271-73; see also In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999); EZ Pawn
Corp. v. Mancias, 934 S.W.2d 87, 88 (Tex. 1996). Recently, the Texas Supreme Court has
reaffirmed there is no adequate remedy by appeal when a party is forced to try a case that the parties
had agreed to arbitrate. See In re McAllen Med. Ctr., Inc., No. 05-0892, 2008 Tex. LEXIS 759, at
*11 (Tex. 2008) ("the very act of proceeding to trial--regardless of the outcome--would defeat the
substantive right involved"); In re Palacios, 221 S.W.3d 564, 565 (Tex. 2006). Because Green Tree
does not have an adequate remedy on appeal, mandamus relief is available. 

V. The Trial Court Erred in Finding Green Tree Waived Right to Arbitration

 Coyner argues Green Tree waived any right to have the dispute submitted to an arbitrator by
filing suit. Although discovery has yet to begin, Coyner has filed an answer, a counterclaim, and
added EMC as a necessary party. In his affidavit filed in support of his argument, Coyner claims he
has been prejudiced by Green Tree's actions because he was forced to hire an attorney and spend
approximately $1,500.00 in attorney's fees and court costs. Coyner states he earns approximately
$50,000.00 a year and is not able to spend substantial amounts of money on litigation. 

 Once a court has determined a valid arbitration agreement exists, the burden shifts to the
party opposing arbitration to raise an affirmative defense to enforcing arbitration. J.M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003); Bath Junkie Franchise, 246 S.W.3d at 364. A
party waives an arbitration clause by "'substantially invoking the judicial process to the other party's
detriment or prejudice.'" In re Fleetwood Homes of Tex., L.P., 257 S.W.3d 692, 694 (Tex. 2008)
(quoting Perry Homes v. Cull, 258 S.W.3d 580, 589-90 (Tex. 2008)). There is a strong presumption
against waiver under the FAA. In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 763 (Tex. 2006). 
Whether the facts found by the trial court amount to a waiver is a question of law for the court. Id. 

 "[T]he test for determining waiver is two-pronged: (1) did the party seeking arbitration
substantially invoke the judicial process; and (2) did the opposing party prove that it suffered
prejudice as a result?" Tex. Residential Mortgage, L.P. v. Portman, 152 S.W.3d 861, 863 (Tex.
App.--Dallas 2005, no pet.); see In re Serv. Corp. Int'l, 85 S.W.3d 171, 174 (Tex. 2002) (party
alleging waiver must establish delay resulted in prejudice). "Whether a party's conduct waives its
arbitration rights under the Federal Arbitration Act is a question of law." In re Bruce Terminix Co.,
988 S.W.2d 702, 703-04 (Tex. 1998). Waiver can be implied from a party's conduct but, in close
cases, the "strong presumption against waiver" should govern. Perry Homes, 258 S.W.3d at 593.

 The Texas Supreme Court has recently noted it has never found a waiver merely by filing
suit. Id. at 590. (5) The Texas Supreme Court has further mandated that a court should not infer waiver
based only on a minimal amount of discovery. Bruce Terminix Co., 988 S.W.2d at 704. In this
case, discovery has not yet begun. The mere act of filing suit is insufficient to substantially invoke
the judicial process.

 In addition, there is insufficient evidence of prejudice. Green Tree did not file the motion
to compel and plea in abatement until approximately ninety days after filing suit. However, "[m]ere
delay alone does not suffice to show prejudice." Bath Junkie Franchise, 246 S.W.3d at 368; see
Serv. Corp. Int'l, 85 S.W.3d at 174; see also Bruce Terminix Co., 988 S.W.2d at 703-04. The Texas
Supreme Court has refused to find prejudice even when the parties had been litigating for two years,
had incurred more than $200,000.00 in expenses, and had conducted extensive discovery. See Vesta
Ins. Group, Inc., 192 S.W.3d at 763. But see Miller Brewing Co. v. Fort Worth Distrib. Co., 781
F.2d 494, 498 (5th Cir. 1986) ("A party 'may not invoke arbitration and yet seek pre-trial discovery
going to the merits . . . .'"). In contrast, Coyner incurred $1,500.00 in expenses and discovery has
yet to begin. Coyner has failed to show sufficient prejudice. The trial court erred in finding Green
Tree waived its right to arbitration. (6)

VI. The Trial Court Erred in Finding the Clause Was Unconscionable

 In the alternative, Green Tree argues the arbitration clause is procedurally and substantively
unconscionable. According to the Texas Supreme Court, arbitration agreements are not inherently
unconscionable. Palm Harbor Homes, Inc., 195 S.W.3d at 678. "Unconscionability includes two
aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the
adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the
fairness of the arbitration provision itself." In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002). 
Courts may consider both procedural and substantive unconscionability when evaluating the validity
of an arbitration provision. Id. (rejecting prior dicta that substantive unconscionability must be
submitted to arbitrator). The party asserting unconscionability bears the burden of proving both
procedural and substantive unconscionability. Turner Bros. Trucking Co., 8 S.W.3d at 376-77. 
Unconscionability is a question of law. Id. at 377. 

 A. The Trial Court Erred in Finding the Clause Was Procedurally Unconscionable


 Coyner claims the clause was procedurally unconscionable because it is located on the last
page of the contract and he did not sign or initial the last page. Coyner alleges he was presented with
the signature page of a number of documents when executing the transaction. According to Coyner,
he was given the impression that each signature page was the final page of each document. Coyner
argues the arbitration provision was hidden on the back of the signature page of the document, and,
therefore, the arbitration clause was procedurally unconscionable. Coyner claims the circumstances
surrounding the execution of the contract were tantamount to Green Tree adding a page to the
agreement and Green Tree obtaining his signature as to the hidden provisions by trick or artifice.

 As discussed above, the failure to read a contract does not ordinarily void a contract absent
fraud or misrepresentations. (7) See In re McKinney, 167 S.W.3d 833, 835 (Tex. 2005); Mancias, 934
S.W.2d at 90; see also Fleetwood Enters. Inc. v. Gaskamp, 280 F.3d 1069, 1077 (5th Cir. 2002)
("The only cases under Texas law in which an agreement was found procedurally unconscionable
involve situations in which one of the parties appears to have been incapable of understanding the
agreement."). There is no evidence Green Tree misrepresented the existence of the arbitration clause
or otherwise engaged in deception. Nor is there any evidence Coyner is incapable of reading or
lacked the ability to understand the agreement. Each page of the contract was numbered and the
signature page was marked "Page 3 of 4." The page number would have put a reasonable person on
notice that there were additional terms on the back of the signature page. (8) Absent a duty to disclose,
an agreement is not unconscionable merely because one party was not informed of the arbitration
clause. See Emerald Tex., Inc. v. Peel, 920 S.W.2d 398, 402 (Tex. App.--Houston [1st Dist.] 1996,
no writ). The arbitration clause is not procedurally unconscionable. 

 B. The Trial Court Erred In Finding the Clause Was Substantively 
Unconscionable


 Coyner also argues the unequal bargaining power of the parties favors a finding of
substantive unconscionability. That rationale for determining the issue of substantive
unconscionability has not been adopted by the Texas Supreme Court. "The test for substantive
unconscionability is whether, 'given the parties' general commercial background and the commercial
needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable
under the circumstances existing when the parties made the contract.'" Palm Harbor Homes, Inc.,
195 S.W.3d at 678 (quoting First Merit Bank, 52 S.W.3d at 757).

 The Texas Supreme Court has held "[t]he principles of unconscionability do not negate a
bargain because one party to the agreement may have been in a less advantageous bargaining
position." Id. at 679. "Adhesion contracts are not automatically unconscionable, and there is nothing
per se unconscionable about arbitration agreements." In re Advance PCS Health L.P., 172 S.W.3d
603, 608 (Tex. 2005); see In re U.S. Home Corp., 236 S.W.3d 761, 764 (Tex. 2007); Palm Harbor
Homes, Inc., 195 S.W.3d at 678. This case contains no facts demonstrating unconscionability other
than being a consumer adhesion contract (i.e., one that respondents were required to enter to
purchase the home) which the Texas Supreme Court has specifically held are not automatically
unconscionable. The trial court erred in finding the arbitration clause unconscionable.

VII. Conclusion

 The trial court clearly abused its discretion in denying the motion to arbitrate. For the
reasons stated above, the petition for writ of mandamus is conditionally granted. We direct the trial
court to strike its order denying the motion to compel arbitration, to enter an order compelling the
parties to submit their disputes to binding arbitration in accordance with the contract, and to enter
an order staying any proceeding in the trial court until the conclusion of arbitration. The writ will
issue only if the trial court fails to take appropriate action in accordance with this opinion.



 Jack Carter

 Justice 


Date Submitted: December 22, 2008

Date Decided: December 23, 2008
1. Relator named the Honorable Richard Anderson as the presiding judge of the County Court
at Law, Harrison County, Texas. The respondent states that the case was before the Honorable Jim
Ammerman, II, County Court at Law, Harrison County, Texas. We judicially notice that Judge
Ammerman is the judge of the County Court at Law in Harrison County and Judge Anderson is the
constitutional county judge. This case was filed in the County Court at Law, Judge Ammerman's
court. 
2. Coyner joined EMC to the lawsuit. EMC opposed the motion to compel arbitration and has
not participated in this mandamus proceeding.
3. The parties have not directed us to where this fact is established in the record, but Coyner
does not contest the location of United Companies.
4. We note the balancing test introduced in Prudential Insurance Company has been criticized
for permitting subjective ad hoc decisions. See Richard E. Flint, The Evolving Standard for
Granting Mandamus Relief In the Texas Supreme Court: One More "Mile Marker Down the Road
of No Return," 39 St. Mary's L. J. 3 (2007); William E. Barker, The Only Guarantee Is There Are
No Guarantees: The Texas Supreme Court's Inability to Establish a Mandamus Standard, 44 Hou.
L. Rev. 703 (2007); see also David A. Anderson, Judicial Tort Reform in Texas, 26 Rev. Litig. 1,
28 (2007). 
5. Perry Homes cites a number of cases for this conclusion--several of which are relied upon
by the relator. See In re Bank One, N.A., 216 S.W.3d 825, 827 (Tex. 2007); D. Wilson Constr. Co.,
196 S.W.3d at 783; Vesta Ins. Group, Inc., 192 S.W.3d at 763; Serv. Corp. Int'l, 85 S.W.3d at 174;
Oakwood Mobile Homes, 987 S.W.2d at 574; Bruce Terminix Co., 988 S.W.2d at 704; Mancias, 934
S.W.2d at 89; Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 898-99 (Tex. 1995). 
6. We note the contract provides, "We may begin a lawsuit to enforce our security interest, or
to obtain a monetary judgment, without waiving your right or our right to compel Arbitration of any
other dispute or remedy. Including the filing of a counterclaim by you in a lawsuit brought by us." 
We have not relied upon this clause or interpreted this clause in this opinion.
7. We note that this Court has found unconscionability when, among other reasons, the
contracting party was functionally illiterate, did not understand the arbitration clause, and the
arbitration clause was not adequately explained. See Turner Bros. Trucking Co., 8 S.W.3d at 376. 

8. The contract consists of four pages numbered "Page 1 of 4," "Page 2 of 4," "Page 3 of 4,"
and "Page 4 of 4." The contract was printed on two sheets of paper with the fourth page on the back
of the third page.