196 S.W.3d 774 (2006)
In re D. WILSON CONSTRUCTION COMPANY, et al., Relators
American Standard and the Trane Company, et al., Petitioners,
v.
Brownsville Independent School District, Respondent.
No. 05-0326, 05-0327.
Supreme Court of Texas.
Argued February 14, 2006.
Decided June 30, 2006.
*776 John R. Griffith, Lucia Thompson, Paul W. Gertz, Mark T. Beaman, David E. Little, Fred L. Shuchart, David P. Benjamin, *777 Cindy A. Lopez Garcia, Albert M. Gutierrez, Jr., Margery Huston, Rick Fancher, Rob Martin, Robert A. Skipworth, Ewing Edben Sikes, III, for relator.
Ernesto Gamez, Jr., Ramon Garcia, Baltazar Salazar, Catherine W. Smith, for real party in interest.
William K. Luyties, Paul Goldenberg, Moises R. Hernandez, James H. Powell, Jr., for person interested in case.
Justice WILLETT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, and Justice JOHNSON joined.
In this consolidated proceeding, we decide whether the court of appeals had jurisdiction over an interlocutory appeal under the Texas Arbitration Act and whether the parties' arbitration agreements are ambiguous. We hold that the court of appeals had jurisdiction over the interlocutory appeal and that the agreements are not ambiguous.

I. Background
In 1993, the Brownsville Independent School District contracted with two general contractors, D. Wilson Construction Company and Stotler Construction Company, to build two schools in Brownsville. Both contracts incorporate General Conditions and Supplementary Conditions.
The General Conditions expressly incorporate AIA Document A201, a standard construction industry document published by the American Institute of Architects that details the parties' respective rights, responsibilities and relationships on the project.[1] Paragraph 4.5 of A201 is titled "Arbitration," and subparagraph 4.5.1, titled "Controversies and Claims Subject to Arbitration," sets forth the broad, catch-all scope of the arbitration agreement: "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . ."
The Supplementary Conditions state that they "modify, change, delete from or add to" the General Conditions. Among other things, the Supplementary Conditions "[a]dd new Clause 4.5.1.1" to the arbitration provision: "Except as otherwise provided in this Contract, any dispute concerning a question of fact arising under this contract, which is not disposed of by agreement shall be decided by [BISD].... The decision of [BISD] shall be final and conclusive unless" it is timely appealed to the Superintendent and then to the BISD Board of Trustees, "whose decision shall be final and conclusive."
*778 This litigation began when one of the subcontractors, American Standard and the Trane Company (Trane), sought injunctive relief against BISD to preserve evidence in a personal injury action that students and teachers brought against Trane in another court. BISD counterclaimed for alleged defects in the construction of the two schools and filed third-party actions against several parties, including general contractors Wilson and Stotler, as well as subcontractors and second-tier subcontractors. Trane and the third-party defendants filed or joined motions to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, and the Texas Arbitration Act, TEX. CIV. PRAC. & REM. CODE§§ 171.001-.098.[2] After a hearing, the trial court issued a brief letter ruling denying arbitration, saying "the Court finds the contract in question ambiguous." Trane and the third-party defendants filed both a petition for writ of mandamus under the FAA and an interlocutory appeal under the TAA, and the court of appeals consolidated the two proceedings. Nos. 13-04-184-CV, 13-04-333-CV, 2005 WL 310777, at *1 (citing In re Valero Energy Corp., 968 S.W.2d 916, 916-17 (Tex.1998)). The court of appeals dismissed the interlocutory appeal for want of jurisdiction, finding the TAA inapplicable since the dispute concerned a "`transaction involving commerce.'" Id. at 2005 WL 310777, at *2 (quoting In re MONY Sec. Corp., 83 S.W.3d 279, 282-83 (Tex.App.Corpus Christi 2002, consolidated appeal and orig. proceeding)). The court also denied the petition for writ of mandamus, holding that clause 4.5.1.1 in the Supplementary Conditions creates ambiguity. Id. at 2005 WL 310777, at *3. In this appeal, Trane and the third-party defendants complain that (1) the court of appeals erred in dismissing their interlocutory appeal under the TAA for want of jurisdiction, and (2) the trial court erred in deeming the arbitration agreements ambiguous and abused its discretion in denying their motions to compel arbitration.

II. Jurisdiction of the Court of Appeals
Trane and the third-party defendants first argue that the court of appeals erred in dismissing their TAA-based interlocutory appeal for want of jurisdiction. We agree.[3]
The contracts in question reference neither the FAA nor TAA, merely noting that "[t]he Contracts shall be governed by the law of the place where the Project is located." We have interpreted identical language *779 to invoke federal and state law. In re L & L Kempwood Assocs., L.P., 9 S.W.3d 125, 127-28 (Tex.1999) (per curiam) (consolidated appeal and orig. proceeding). Trane and the third-party defendants sought relief under both statutes in the court of appeals, bringing a petition for writ of mandamus under the FAA, see Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272-73 (Tex.1992), and an interlocutory appeal under the TAA, TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1).
While refusing jurisdiction under the TAA, the court of appeals recognized that it at least had jurisdiction under the FAA to consider the mandamus petition. 2005 WL 310777, at *2. We held in Jack B. Anglin Co. that mandamus is appropriate to review a trial court's denial of a motion to compel arbitration under the FAA. 842 S.W.2d at 272-73.
The court of appeals determined that it lacked jurisdiction over the interlocutory appeal under the TAA because the construction contracts involved interstate commerce, thus implicating the FAA. 2005 WL 310777, at *2; see Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (the FAA applies when the dispute concerns a "contract evidencing interstate commerce"); 9 U.S.C. § 1 ("`commerce' . . . means commerce among the several States"); In re L & L Kempwood Assocs., L.P., 9 S.W.3d at 127 (noting that the FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach").
The court of appeals is not alone in dismissing interlocutory appeals under the TAA when the FAA applies. See Kroupa v. Casey, Nos. 01-05-00224-CV, 01-05-00376-CV, 2005 WL 3315279, at *4 (Tex.App.Houston [1st Dist.] 2005, consolidated appeal and orig. proceeding) (not designated for publication); Am. Med. Tech., Inc. v. Miller, 149 S.W.3d 265, 269-70 (Tex.App.Houston [14th Dist.] 2004, consolidated appeal and orig. proceeding); Verlander Family Ltd. P'ship v. Verlander, No. 08-02-00135-CV, 2003 WL 304098, at *3 (Tex.App.El Paso 2003, no pet.); Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 498 (Tex.App.San Antonio 2000, consolidated appeal and orig. proceeding). Other courts have granted mandamus relief and dismissed the consolidated interlocutory appeal as moot. See, e.g., Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby, 183 S.W.3d 891, 895 & n. 5 (Tex.App.Austin 2006, consolidated appeal and orig. proceeding); In re MacGregor (FIN) Oy, 126 S.W.3d 176, 181, 184 (Tex.App.Houston [1st Dist.] 2003, consolidated appeal and orig. proceeding).
We take this opportunity to clarify precisely when the FAA preempts the TAA. Many courts of appeals wrongly view the FAA and TAA as mutually exclusive, but the United States Supreme Court and this Court have held a different view for some time: the FAA only preempts contrary state law, not consonant state law. The United States Supreme Court has said:
The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal lawthat is, to the extent that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." The question before us, therefore, is whether application of [state law] to stay arbitration under this contract in interstate commerce. . . would undermine the goals and policies of the FAA.
*780 Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 477-78, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (citations omitted) (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). Similarly, this Court has noted that the FAA "preempts state statutes to the extent they are inconsistent with that Act." Jack B. Anglin Co., 842 S.W.2d at 271.
Recently, in the case of In re Nexion Health at Humble, Inc., this Court articulated a four-factor test to determine whether the TAA would thwart the goals and policies of the FAA in a particular case. 173 S.W.3d 67, 69 (Tex.2005) (per curiam) (construing 9 U.S.C. § 2). The FAA only preempts the TAA if: "(1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses [under state law], and (4) state law affects the enforceability of the agreement." Id. (emphasis added). In today's case, the court of appeals ignored the fourth factor. The mere fact that a contract affects interstate commerce, thus triggering the FAA, does not preclude enforcement under the TAA as well. For the FAA to preempt the TAA, state law must refuse to enforce an arbitration agreement that the FAA would enforce, either because (1) the TAA has expressly exempted the agreement from coverage, see TEX. CIV. PRAC. & REM. CODE § 171.002(a) (detailing various claims the TAA "does not apply to"), or (2) the TAA has imposed an enforceability requirement not found in the FAA, see In re Nexion Health at Humble, Inc., 173 S.W.3d at 69 ("The TAA interferes with the enforceability of the arbitration agreement by adding an additional requirementthe signature of a party's counselto arbitration agreements in personal injury cases."). The parties have asserted nothing in the TAA or other state law that would subvert enforcement of the agreements at issue. Therefore, the FAA does not preempt the TAA in this case, and the court of appeals had jurisdiction under both laws.[4]

III. Ambiguity of the Arbitration Agreements
Trane and the third-party defendants next argue that the trial court wrongly deemed the arbitration agreements ambiguous and abused its discretion in denying their motions to compel arbitration. We decide the merits under our mandamus jurisdiction.[5]
Mandamus is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal, Walker v. Packer, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding), as when a party is erroneously denied its contracted-for arbitration rights under the FAA, Jack B. Anglin *781 Co., 842 S.W.2d at 272-73. Also, a trial court "has no `discretion' in determining what the law is or applying the law to the facts." Walker, 827 S.W.2d at 840. In evaluating a motion to compel arbitration, a court must determine first whether a valid arbitration agreement exists, and then whether the agreement encompasses the claims raised. In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (per curiam). When deciding whether the parties agreed to arbitrate under the FAA, courts should apply ordinary state law principles regarding the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227-28 (Tex.2003).
In a letter ruling, the trial court found "the contract in question ambiguous"; however, the record does not indicate whether the trial court was uncertain as to the agreements' existence or merely their scope. We address these two issues in turn.

A. Ambiguity Concerning the Existence of Valid Agreements
Whether a valid arbitration agreement exists is a legal question subject to de novo review. J.M. Davidson, Inc., 128 S.W.3d at 227. Whether contractual ambiguity exists is likewise a question of law. See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.1996). Inartful drafting does not alone render a contractual provision ambiguous. See Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). A contract is ambiguous only if it is subject to "two or more reasonable interpretations after applying the pertinent rules of construction." Columbia Gas Transmission Corp., 940 S.W.2d at 589. Ambiguity does not exist merely because the parties assert forceful and diametrically opposing interpretations. Id.
BISD contends that the contracts with Wilson and Stotler (1) contain no arbitration language at all, or (2) contain ambiguous language. The trial court's three-sentence letter ruling is silent on the first point, while the court of appeals, "[a]ssuming without determining that the contracts contain arbitration language," concluded that "the supplementary conditions create ambiguity." 2005 WL 310777, at *3.
We disagree with BISD that its contracts with Wilson and Stotler contained no arbitration language. The contracts validly and expressly incorporate by reference the expansive arbitration language of subparagraph 4.5.1 of A201. Innumerable contracts are consummated every day in Texas that incorporate other documents by reference. A contractual term is not rendered invalid merely because it exists in a document incorporated by reference, Owen v. Hendricks, 433 S.W.2d 164, 166 (Tex.1968), and we agree with the courts of appeals that arbitration-related language is no exception to this rule. See, e.g., Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc., 46 S.W.3d 417, 420 (Tex.App.Austin 2001, pet. denied) (holding that an unsigned arbitration agreement contained in a document incorporated by reference into the signed contract constitutes an enforceable arbitration agreement); D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 230 (Tex.App.Corpus Christi 1992, writ dism'd w.o.j.) (rejecting the argument that an arbitration agreement incorporated by reference is invalid or unenforceable). Accordingly, we reject BISD's argument that these provisions were not validly incorporated into the contracts with Wilson and Stotler.
*782 We likewise reject BISD's argument, and the trial court's holding, that the arbitration agreements are ambiguous. Subparagraph 4.5.1 of A201 states: "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ...." The Supplementary Conditions "[a]dd new Clause 4.5.1.1" to the arbitration provision: "Except as otherwise provided in this Contract, any dispute concerning a question of fact arising under this contract, which is not disposed of by agreement shall be decided by [BISD] .... The decision of [BISD] shall be final and conclusive unless" it is timely appealed to the Superintendent and then to the BISD Board of Trustees, "whose decision shall be final and conclusive."
The caption of clause 4.5.1.1 in the Supplementary Conditions evinces the parties' intent to "[a]dd new Clause 4.5.1.1 to subparagraph 4.5.1." Clause 4.5.1.1 is added to subparagraph 4.5.1, and the clause's numerical designation places it beneath subparagraph 4.5.1. In addition, clause 4.5.1.1 begins with the caveat, "[e]xcept as otherwise provided in this Contract." Subparagraph 4.5.1 does provide otherwise in certain cases. If the parties intended for clause 4.5.1.1 to supplant subparagraph 4.5.1, they could have easily drafted language to accomplish exactly that.[6] Further, clause 4.5.1.1 does not mention the additional arbitration procedures set forth in subparagraphs 4.5.2-4.5.7. If clause 4.5.1.1 negates subparagraph 4.5.1, as BISD contends, then subparagraphs 4.5.2-4.5.7 are meaningless. The placement, caption, and caveat of clause 4.5.1.1, as well as the language of subparagraphs 4.5.2-4.5.7, indicate that the clause is subordinate to subparagraph 4.5.1 if subparagraph 4.5.1 applies in a given situation.
BISD argues that such a construction would render clause 4.5.1.1 meaningless. We disagree. By its terms, clause 4.5.1.1 applies to "any dispute concerning a question of fact arising under this contract," while subparagraph 4.5.1 applies to "[a]ny controversy or Claim arising out of or relating to the Contract, or the breach thereof ...." (emphasis added). While the scope of clause 4.5.1.1 is narrower than the scope of subparagraph 4.5.1, certain situations would fall solely under the factual dispute clause. For example, the construction contracts could have called for solid brass doorknobs throughout the schools. BISD could have argued that the doorknobs Wilson and Stotler used were brass-plated instead of solid brass. Whether the doorknobs are solid brass or brass-plated would be a factual dispute subject to clause 4.5.1.1.
We hold that the arbitration agreements and clause 4.5.1.1 can be reconciled; the arbitration agreements are not susceptible to more than one reasonable interpretation and are therefore not ambiguous. Columbia Gas Transmission Corp., 940 S.W.2d at 589.

B. Ambiguity Concerning the Scope of the Agreements
We next consider whether there is ambiguity concerning the agreements' scope. The strong presumption favoring arbitration generally requires that we resolve doubts as to the scope of the agreements in favor of coverage. In re Kellogg, Brown & Root, Inc., 166 S.W.3d *783 732, 737 (Tex.2005); In re FirstMerit Bank, 52 S.W.3d 749, 753 (Tex.2001); Cantella & Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex.1996) (per curiam) (orig.proceeding). Once an agreement is established, "a court should not deny arbitration `unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex.1995) (per curiam) (orig.proceeding) (emphasis in original) (quoting Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 37 (5th Cir.1990)).
Here, BISD claims there are construction defects throughout the two schools. This dispute is a "controversy or Claim arising out of or related to the Contract" to build the schools and thus falls squarely within the scope of the arbitration agreements.
We find no ambiguity in either the validity or the scope of these arbitration agreements. Trane and the third-party defendants have proven the existence of valid arbitration agreements that cover the present dispute. In re Oakwood Mobile Homes, Inc., 987 S.W.2d at 573. The trial court abused its discretion by denying the motions to compel arbitration after finding "the contract in question ambiguous."

C. Waiver
Finally, BISD argues that Trane and Stotler waived any right to arbitrate. In a personal injury suit filed by students and teachers in a separate court, Trane, Stotler, and Mac's Insulation, Inc. filed cross-actions against BISD, seeking indemnity in that case. Trane also filed the present suit against BISD to obtain injunctive relief to preserve evidence in that personal injury case.
There is a strong presumption against waiver under the FAA. In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 762 (Tex. 2006) (per curiam). "Merely taking part in litigation is not enough unless a party `has substantially invoked the judicial process to its opponent's detriment.'" Id. (quoting In re Serv. Corp. Int'l, 85 S.W.3d 171, 174 (Tex.2002)). In In re Vesta Ins. Group, Inc., we held that the relators, who litigated in the trial court for two years, did not substantially invoke the judicial process to their opponent's detriment because the relators engaged in minimal discovery, and the real party in interest failed to demonstrate sufficient prejudice to overcome the strong presumption against waiver. Id. at 763.
Likewise, BISD has failed to demonstrate how the cross-actions for indemnity in the separate personal injury suit or Trane's pursuit of injunctive relief related to that case have worked to BISD's detriment. We hold that the actions of Trane, Stotler, and Mac's Insulation, Inc. do not constitute waiver of their right to arbitrate.

IV. Conclusion
The trial court abused its discretion by finding the contracts ambiguous and denying the motions to compel arbitration. There is no ambiguity in either the existence or scope of these arbitration agreements. We conditionally grant the writ of mandamus and direct the trial court to (1) vacate its order denying the motions to compel arbitration, (2) grant Stotler's motion to compel arbitration, (3) conduct further proceedings to determine whether Wilson is entitled to arbitration,[7] and (4) conduct further proceedings to determine whether the various nonsignatories are entitled to arbitration. The writ will issue only if the trial court fails to comply. Insofar *784 as we have granted full relief under our mandamus jurisdiction, we dismiss the related interlocutory appeal as moot.
Justice BRISTER filed a concurring opinion.
Justice BRISTER, concurring.
I agree that the court of appeals erred in dismissing the petitioners' interlocutory appeal, and join in the Court's judgment. I disagree that we should continue requiring litigants to pursue parallel mandamus and interlocutory appeal proceedings in arbitration cases. This unnecessary duplication makes arbitration more cumbersome and costly than other cases, rather than the "simplicity, informality, and expedition" intended for them. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
An interlocutory appeal is proper to enforce arbitration agreements under the Texas Arbitration Act. See TEX. CIV. PRAC. & REM. CODE § 171.098. Mandamus is proper to enforce arbitration agreements under the Federal Arbitration Act. See In re Weekley, 180 S.W.3d 127, 130 (Tex.2005).
When a party chooses the wrong form to enforce arbitration, Texas appellate courts "must not . . . dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities." TEX. R. APP. P. 44.3; Higgins v. Randall County Sheriff's Office, 193 S.W.3d 898, 899 (Tex.2006) (per curiam); Linwood v. NCNB Texas, 885 S.W.2d 102, 103 (Tex.1994); Grand Prairie Indep. Sch. Dist. v. S. Parts Imps., Inc., 813 S.W.2d 499, 500 (Tex.1991) (per curiam). When this and other Texas appellate courts decide that an appeal or other pleading should have been pursued by mandamus, we do not generally toss out the appeal or require it to be done twice; instead, we treat the improper appeal as a proper mandamus. See, e.g., Powell v. Stover, 165 S.W.3d 322, 324 (Tex.2005); Edgewood Indep. Sch. Dist. v. Kirby, 804 S.W.2d 491, 494 (Tex.1991); Bielamowicz v. Cedar Hill Indep. Sch. Dist., 136 S.W.3d 718, 719-20 (Tex.App.Dallas 2004, pet. denied); In re Cobos, 994 S.W.2d 313, 314 (Tex.App. Corpus Christi 1999, no pet.); In re Swarthout, 982 S.W.2d 92, 92 (Tex.App. Houston [1st Dist.] 1998, no pet.); State ex rel. Wade v. Stephens, 724 S.W.2d 141, 143 (Tex.App.Dallas 1987, no writ); Clark v. Russell, 590 S.W.2d 651, 652 (Tex.Civ. App.Dallas 1979, no writ).
Parties should not have to file both an interlocutory appeal and an original proceeding; even attorneys who can predict which one an appellate court will find proper may hesitate to gamble with their client's money. I would allow them to file either, and then have the appellate courts treat it as they think proper.
NOTES
[1] Document Synopses by Series, at http://www.aia.org/docs_series. The American Institute of Architects represents the professional interests of America's architects. The AIA: Advocacy Community, Knowledge, at http://www.aia.org/about_default. Among other things, the AIA publishes industry standard documents for design and construction projects. About AIA Contract Documents, at http://www.aia.org/docs_about & defPr= 1. Document A201 "is frequently adopted by reference into a variety of other agreements ... to establish a common basis for the primary and secondary relationships on the typical construction project." Instruction Sheet for AIA Document A201, General Conditions of the Contract for Construction-1987 Edition at 1, available at http://www.engin.umich. edu/class/cee431/AIA/A201Inst.PDF. In the instant case, the General Conditions incorporate the 1987 (14th) Edition of AIA Document A201, which is approved and endorsed by the Associated General Contractors of America. AIA Document A201, General Conditions of the Contract for Construction (1987).
[2] Four third-party defendants filed independent motions to compel arbitration: Wilson, Stotler, Mijares Mora Architects, Inc., and Zamora Engineering, Inc. Mac's Insulation, Inc. joined Stotler's motion. Trane, Victoria Air Conditioning, Ltd., and Superheat Air Balancing Co., Inc. joined the Wilson and Stotler motions. Al Cardenas Masonry Inc. joined Trane's motion. Sechrist-Hall Co., Wrightway Construction, Inc., and Rio Mechanical, Inc. joined the Wilson and Trane motions. The independent motions of Mijares Mora Architects, Inc. and Zamora Engineering, Inc. do not invoke the FAA or TAA. Wilson's motion is not in the record, and we are thus unable to determine whether it invokes the FAA, TAA, both, or neither. All other motions invoke the FAA or both the FAA and the TAA. The motions of all subcontractors and second-tier subcontractors also argue that the doctrine of equitable estoppel allows nonsignatories to the Wilson and Stotler contracts to obtain the benefits of the arbitration agreements therein.
[3] This Court undeniably has jurisdiction to review the correctness of the court of appeals' decision that it lacked jurisdiction over the TAA-based interlocutory appeal. See McAllen Med. Ctr., Inc. v. Cortez, 66 S.W.3d 227, 231 (Tex.2001) ("When a court of appeals determines that it lacks jurisdiction over an interlocutory appeal, this Court has jurisdiction to review that decision.").
[4] While we continue to see no benefit in requiring parties to pursue parallel proceedings that are "unnecessarily expensive and cumbersome," we remain mindful that "we may not enlarge appellate jurisdiction absent legislative mandate." Jack B. Anglin Co., 842 S.W.2d at 272. We again invite the Legislature, "[i]n the interests of promoting the policy considerations of rigorous and expedited enforcement of arbitration agreements, ... to consider amending the Texas Act to permit interlocutory appeals of orders issued pursuant to the Federal Act." Id.
[5] Our analysis today proceeds under the FAA because, as a procedural matter, Trane and the third-party defendants only assert in their "Statement of Jurisdiction" that this Court has jurisdiction under Cortez to decide whether the lower court had jurisdiction. 66 S.W.3d at 231 ("When a court of appeals determines that it lacks jurisdiction over an interlocutory appeal, this Court has jurisdiction to review that decision."). They do not assert "conflict or dissent" jurisdiction under the general interlocutory appeal statute. TEX. GOV'T CODE § 22.225(c).
[6] A subparagraph later in the Supplementary Conditions states that it "[d]elete[s] the first sentence [of subparagraph 5.2.1 of the General Conditions] and substitute[s] the following...." Clearly, the parties were free to delete and replace language in the General Conditions with language in the Supplementary Conditions, and they had done so elsewhere.
[7] Wilson's motion to compel arbitration is not in the record.