COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-373-CV

 

TEXAS CITYVIEW CARE CENTER, L.P.                                  APPELLANTS

D/B/A
CITYVIEW CARE CENTER, DALLAS

HICKMAN,
R.N., AND LAWRENCE

WAYNE
POWELL, JR.   

 

                                                   V.

 

LINDA FRYER, NELDA PATTON, AND                                      APPELLEES

MITZI
GRIFFIN, INDIVIDUALLY AND AS

INDEPENDENT
EXECUTRIX OF THE ESTATE

OF
FRANCES EMMONS

                                                    

 

                                              ------------

 

            FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                        NO.
2-06-426-CV

 

IN RE TEXAS CITYVIEW CARE CENTER, L.P.                             RELATORS

D/B/A
CITYVIEW CARE CENTER, LAWRENCE

WAYNE
POWELL, JR., AND DALLAS HICKMAN, R.N. 

 

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

 

                                             OPINION








                                              ------------

                                            Introduction

Appellants
and relators (referred to herein as appellants) Texas Cityview Care Center,
L.P. d/b/a Cityview Care Center, Dallas Hickman, R.N., and Lawrence Wayne
Powell, Jr. filed this consolidated interlocutory appeal and petition for writ
of mandamus[1]
challenging the trial court=s orders refusing to (1) compel arbitration and (2) abate the
underlying suit pending the outcome of arbitration proceedings.  We affirm the trial court=s orders and deny mandamus relief.

                                        Background Facts

Appellees Mitzi GriffinCindividually and as independent executrix of the estate of Frances
EmmonsCLinda Fryer, and Nelda Patton filed the underlying medical malpractice
suit over the care given to Emmons, their mother, while she was a resident at
Cityview Care Center.  Appellants moved
to compel arbitration of the suit based on an arbitration agreement signed by
Griffin when Emmons was first admitted to the facility. 








The record shows that on
March 19, 2004, the day Emmons was admitted to the facility, she personally
signed a AMedical
Power of Attorney@ naming
Griffin her agent for the purpose of making health care decisions.  On that same day, Griffin signed, among other
documents, an arbitration agreement and a separate facility admission agreement[2]
purporting to bind her mother to those agreements.  Emmons is identified in both of those
documents as the AResident,@ but Griffin is the only one who signed them; the only document Emmons
signed on March 19 was the medical power of attorney. 

Griffin signed and dated the
arbitration agreement immediately above the caption, AResident/Representative Signature Date.@[3]  She signed the facility
admission agreement above the caption, AResponsible Party Signature,@ even though the signature block listed Emmons as the AResponsible Party.@[4] 








At the hearing on appellants= motion to compel arbitration and motion to abate the trial
proceedings pending arbitration, the trial court stated that it would deny the
motion to compel because appellants had presented no evidence of a valid
arbitration agreement.  The court indicated
that the agreement was not valid because Athe person who signed it [the Resident and Facility Arbitration
Agreement] didn=t have the
legal authority, and there=s no evidence before me that [she] had legal authority, to sign on
behalf of Ms. Emmons.@  The court subsequently signed orders denying
appellants= motion to
compel and motion to abate the trial pending arbitration.

                                          Issue Presented








In one issue, appellants
contend that the trial court erred by refusing to compel arbitration and abate
the underlying suit pending arbitration. 
According to appellants, Griffin had either actual or apparent authority
to bind Emmons and Aall persons
who[se] claim is derived through or on behalf of [Emmons], including that of
any parent, spouse, child, guardian, executor, administrator, legal
representative, or heir of [Emmons],@ to the arbitration agreement. 
Appellees contend that the agreement is not valid because there is no
evidence that Griffin had authority to enter into the agreement.  They also contend that the arbitration
agreement is invalid under section 74.451 of the civil practice and remedies
code.[5]

                                       Interlocutory
Appeal








To determine
whether we have jurisdiction over the interlocutory appeal in addition to the
mandamus petition, we must decide whether the trial court denied appellants= motion to compel pursuant to the Federal Arbitration Act (FAA), the
Texas General Arbitration Act (TGAA), or both. 
See 9 U.S.C.A. '' 1-16 (West 1999 & Supp. 2006); Tex.
Civ. Prac. & Rem. Code Ann. '' 171.001-.098 (Vernon 2005); In re Citigroup Global Mkts., Inc.,
202 S.W.3d 477, 480 (Tex. App.CDallas 2006, orig. proceeding). 
In Texas, a trial court=s denial of arbitration under the FAA may be challenged only by
mandamus and not by interlocutory appeal. 
In re D. Wilson Constr. Co., 196 S.W.3d 774, 779 (Tex. 2006)
(orig. proceeding); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272
(Tex. 1992) (orig. proceeding).  But a
party may seek to enforce an arbitration agreement under both the FAA and TGAA
if, like the agreement here, it does not say whether the FAA or TGAA applies.  D. Wilson Constr. Co., 196 S.W.3d at 778-79.  Texas appellate courts have jurisdiction over
interlocutory appeals from the denial of arbitration under the TGAA only or
under both the FAA and TGAA.  Tex. Civ. Prac. & Rem. Code Ann. ' 171.098 (a)(1); D. Wilson Constr. Co., 196 S.W.3d at 778-79.

Here, the agreement did not
purport to be governed by either the FAA or the TGAA.  In their motion to compel, appellants sought
arbitration under the FAA only; however, appellees contended in their response
that the FAA is inapplicable, and that enforceability of the agreement is
governed by the TGAA.  The trial court=s order denying arbitration does not specify whether the denial was
under the FAA or TGAA.  Appellants sought
both a mandamus and an interlocutory appeal; in their appeal, they contend that
the agreement is enforceable under the TGAA as well as the FAA.  Accordingly, we have jurisdiction over both
the appeal and the mandamus unless the FAA pre-empts the TGAA in this instance.  See id. at 779-80.








To determine whether an
agreement that does not purport to be under either the FAA or TGAA is governed
only by the FAA (i.e., whether the FAA pre-empts the TGAA), thus precluding an
appellate court=s
jurisdiction over an interlocutory appeal, we must determine whether (1) the
agreement is in writing, (2) it involves interstate commerce, (3) it can
withstand scrutiny under traditional contract defenses, and (4) state
law affects the enforceability of the agreement.  9 U.S.C.A. ' 2; D. Wilson Constr. Co., 196 S.W.3d at 780; In re Nexion
Health at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005) (orig.
proceeding).  For the FAA to preempt the
TGAA, state law must refuse to enforce an arbitration agreement that the FAA
would enforce, either because (1) the TGAA has expressly exempted the agreement
from coverage, or (2) the TGAA has imposed an enforceability requirement not
found in the FAA.  D. Wilson Constr.
Co., 196 S.W.3d at 780.  In other
words, the FAA pre-empts only contrary state law, not consonant state law.  Id. at 779.








Here, appellees challenged
the validity of the arbitration agreement under a traditional contract defenseClack of authorityCand on state law groundsCfailure to comply with section 74.451 of the civil practice and
remedies code.  Because an analysis of
these defenses is necessary to review the third and fourth pre-emption factorsCwhether the agreement can withstand traditional contract defenses and
whether state law affects enforceability of the agreementCwe must review the merits of these defenses first to determine whether
the FAA pre-empts the TGAA, and, thus, whether we have jurisdiction over the
interlocutory appeal.  See In re Rapid
Settlements, Ltd., 202 S.W.3d 456, 460-63 (Tex. App.CBeaumont 2006, orig. proceeding).

Analysis

A party seeking to compel
arbitration under either the FAA or TGAA must establish the existence of a
valid, enforceable arbitration agreement and show that the claims raised fall
within the scope of that agreement.  In
re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig.
proceeding), abrogated in part on other grounds by In re Halliburton Co.,
80 S.W.3d 566, 571‑72 (Tex. 2002) (orig. proceeding), cert. denied,
537 U.S. 1112 (2003); In re Neutral Posture, Inc., 135 S.W.3d 725, 729
(Tex. App.CHouston [1st
Dist.] 2003, orig. proceeding); Jabri v. Qaddura, 108 S.W.3d 404, 410
(Tex. App.CFort Worth
2003, no pet.).  Ordinarily, the trial
court rather than the arbitrator decides gateway matters, such as whether a
valid arbitration agreement exists.  See
In re Weekley Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005) (orig.
proceeding).    A trial court=s determination of an arbitration agreement=s validity is a legal question subject to de novo review.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003).








In determining whether an
arbitration agreement is valid under the FAA and TGAA, courts generally apply
ordinary state law principles of contract formation.  First Options of Chicago, Inc. v. Kaplan,
514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995); D. Wilson Constr. Co.,
196 S.W.3d at 781; In re Premont ISD, No. 04-06-00810-CV, 2007 WL
390784, at *3 (Tex. App.CSan Antonio
Feb. 7, 2007, orig. proceeding); Rapid Settlements, Ltd., 202 S.W.3d at
460; see Ikon Office Solutions, Inc. v. Eifert, 2 S.W.3d 688, 693 (Tex.
App.CHouston [14th Dist.] 1999, no pet.). 
Thus, we will first review appellants= contention that Griffin had authority to bind Emmons and all parties
claiming under Emmons to the arbitration agreement because if the evidence
shows that she lacked the authority to do so, the agreement is unenforceable
under either the FAA or the TGAA.  See,
e.g., Gibson v. Bostick Roofing & Sheet Metal Co., 148 S.W.3d
482, 487-88, 491-92 (Tex. App.CEl Paso 2004, no pet.) (holding that agreement was unenforceable
against third party when evidence failed to show that party actually signing
agreement had actual or apparent authority); Bennett v. Miller, 137
S.W.3d 894, 895-98 (Tex. App.CTexarkana 2004, no pet.) (holding that contingency fee agreement was
not valid and enforceable because temporary guardian did not have authority to
bind ward to agreement).

 








 

 

Validity of Lack of Authority Defense

Medical Power of Attorney

Appellants
first contend that Griffin had actual authority to sign the arbitration
agreement on Emmons=s behalf by
virtue of the medical power of attorney that Emmons signed on the day of her admission
to Cityview.

In Texas, medical powers of
attorney are governed by the health and safety code.  Tex.
Health & Safety Code Ann. '' 166.151B.166 (Vernon
2001).  An agent for purposes of a
medical power of attorney is Aan adult to whom authority to make health care decisions is delegated
under a medical power of attorney.@  Id. ' 166.151(2).  A A[h]ealth care or treatment decision@ means Aconsent,
refusal to consent, or withdrawal of consent to health care, treatment,
service, or a procedure to maintain, diagnose, or treat an individual=s physical or mental condition.@  Id. ' 166.002(7) (Vernon Supp. 2006).








The medical power of attorney
that Emmons signed reads, in pertinent part: 
AI, Frances
Emmons, . . . appoint . . . Griffin . . . as
my agent to make any and all health care decisions for
me . . . .  This medical power of attorney
takes effect if I become unable to make my own health care decisions and this
fact is certified in writing by my physician.@ [Emphasis added.]  There is
also a statement on the first page of the document that the agent=s authority Abegins when
your doctor certifies that you lack the competence to make health care
decisions.@ 

The law does not presume
agency.  Lifshutz v. Lifshutz, 199
S.W.3d 9, 22 (Tex. App.CSan Antonio
2006, pets. denied); Suarez v. Jordan, 35 S.W.3d 268, 272 (Tex. App.CHouston [14th Dist.] 2000, no pet.); Disney Enters., Inc. v. Esprit
Fin., Inc., 981 S.W.2d 25, 30 (Tex. App.CSan Antonio 1998, pet. dism=d w.o.j.).  The party alleging
agency has the burden to prove its existence. 
Lifshutz, 199 S.W.3d at 22; Disney Enters., 981 S.W.2d at
30. Absent actual or apparent authority, an agent cannot bind a principal.  Lifshutz, 199 S.W.3d at 22.

Actual authority includes
both express and implied authority and usually denotes the authority a
principal (1) intentionally confers upon an agent, (2) intentionally allows the
agent to believe he possesses, or (3) by want of due care allows the agent to
believe he possesses.  2616 S. Loop
L.L.C. v. Health Source Home Care, Inc., 201 S.W.3d 349, 356 (Tex. App.CHouston [14th Dist.] 2006, no pet.); Lifshutz, 199 S.W.3d at
22.  Actual authority is created through
conduct of the principal communicated to the agent.  Lifshutz, 199 S.W.3d at 22; Huynh
v. Nguyen, 180 S.W.3d 608, 622‑23 (Tex. App.CHouston [14th Dist.] 2005, no pet.).








Appellants= argument fails for several reasons. 
First, there is no evidence that the medical power of attorney ever
became effective.  By statute and by its
own terms, the medical power of attorney did not confer authority on Griffin
until a doctor certified that Emmons was unable to make health care decisions
for herself.  See Tex. Health & Safety Code Ann. '166.152(b); cf. Comerica Bank-Tex. v. Tex. Commerce Bank Nat=l Ass=n, 2 S.W.3d 723, 725-27 (Tex. App.CTexarkana 1999, pet. denied) (holding that similar language in durable
power of attorney was valid and, thus, agent=s authority under power of attorney did not begin until after
disability of principal).  There is no
evidence of any such certification, or any other evidence of incompetency, in
the record.[6]









In addition, nothing in the
medical power of attorney indicates that it was intended to confer authority on
Griffin to make legal, as opposed to health care, decisions for Emmons, such as
whether to waive Emmons=s right to a
jury trial by agreeing to arbitration of any disputes.  See Tex.
Health & Safety Code Ann. '' 166.002(7) (defining health care decision), 166.152(a) (providing
that agent named in medical power of attorney may make Aany health care decision on the principal=s behalf that the principal could make if the principal were competent@) (emphasis added).  Thus, even
if the medical power of attorney had become effective, the scope of Griffin=s authority would not have extended to signing the arbitration
agreement.  See id. '' 166.002(7), 166.152(a); cf. Serv. Fin. v. Adriatic Ins. Co.,
46 S.W.3d 436, 455 (Tex. App.CWaco 2001), judgm=t vacated by agr. of parties, 51 S.W.3d
450 (Tex. App.CWaco 2001,
no pet.) (AA power of
attorney authorizes the agent to perform specified acts on behalf of the
principal.@).

Accordingly, for the reasons
set forth above, we hold that appellants failed to meet their burden of showing
that Griffin had actual authority to sign the arbitration agreement on Emmons=s behalf pursuant to the medical power of attorney.

Emmons=s Allowing Griffin to Sign Other Documents








Appellants alternatively
argue that if Griffin did not have actual authority to sign the arbitration
agreement as Emmons=s agent
under the medical power of attorney, the evidence shows that Emmons conferred
apparent authority on Griffin to sign the arbitration agreement by either
allowing Griffin to sign, or doing nothing to prevent Griffin from signing, the
arbitration agreement and other documents as Emmons=s representative.[7]  Appellants contend that Ahad . . . Emmons not wanted Griffin to act on her behalf during the
admission process, she could have easily signed the admissions forms on her own
behalf or alerted someone at Cityview that she did not want Griffin to sign on
her behalf.@  According to appellants, the fact that Emmons
signed the medical power of attorney, but not the other documents, shows that
Emmons intended for Griffin to signCor acquiesced in Griffin=s signingCthe other
documents as her agent.








Apparent authority arises
through acts of participation, knowledge, or acquiescence by the principal
that clothe the agent with the indicia of apparent authority.  Ins. Co. of N. Am. v. Morris, 981
S.W.2d 667, 672 (Tex. 1998).  Certain
limitations apply in determining whether apparent authority exists.  Lifshutz, 199 S.W.3d at 22; Suarez,
35 S.W.3d at 272.  First, apparent
authority is determined by looking to the acts of the principal and
ascertaining whether those acts would lead a reasonably prudent person using
diligence and discretion to suppose the agent had the authority to act on
behalf of the principal.  Lifshutz,
199 S.W.3d at 22; Suarez, 35 S.W.3d at 272.  Only the conduct of the principal may be
considered; representations made by the agent of her authority have no
effect.  Lifshutz, 199 S.W.3d at
22-23; Suarez, 35 S.W.3d at 272. 
Second, the principal must either have affirmatively held the agent out
as possessing the authority, or the principal must have knowingly and
voluntarily permitted the agent to act in an unauthorized manner.  Lifshutz, 199 S.W.3d at 23; Suarez,
35 S.W.3d at 272.  Finally, a party
dealing with an agent must ascertain both the fact and the scope of the agent=s authority, and if the party deals with the agent without having made
such a determination, she does so at her own risk.  Lifshutz, 199 S.W.3d at 23; Suarez,
35 S.W.3d at 272.

Here, the only possible
evidence of Emmons=s Aparticipation, knowledge, or acquiescence@ that would clothe Griffin with any indicia of authority is Emmons=s signing the medical power of attorney document.  But we have already determined that there is
no evidence that Griffin=s authority
under that document had become effective, and the authority granted under that
document does not extend to signing the arbitration agreement.  There is no evidence concerning Emmons=s intent in signing the medical power of attorney as opposed to the
other documents.  Moreover, there is no
evidence that Emmons was even aware that Griffin had signed any other documents
on her behalf.








Appellants focus on Griffin=s activities in signing the documents, but in an apparent authority
analysis, what matters is the principal=s actions.  See Morris,
981 S.W.2d at 672; Lifshutz, 199 S.W.3d at 22.  The only evidence of Emmons=s actions is her signing the medical power of attorney the same
day.  We cannot infer from this that she
intended Griffin to have any authority other than as expressly set out in that
document.  Nor may we infer from the absence
of evidence regarding Emmons=s intent or knowledge as to the other documents Griffin signed that
Emmons performed acts of participation, knowledge, or acquiescence that would
lead a reasonably prudent person using diligence and discretion to suppose that
Griffin had the authority to act on Emmons=s behalf.  Accordingly, we
conclude and hold that appellants failed to meet their burden to prove the
existence of an agency relationship giving Griffin authority to act on Emmons=s behalf with respect to the arbitration agreement; therefore,
appellants likewise failed to prove the existence of a valid arbitration
agreement under state law principles of contract formation.








Because appellants failed to
prove the existence of a valid arbitration agreement under state contract law,
the third factor that must be present for the FAA to pre-empt the TGAACability to withstand scrutiny under traditional contract defensesCis not present here.  The
purpose of 9 U.S.C.A. section 2 was to Aforeclose state legislative attempts to undercut the enforceability of
arbitration agreements.@  Southland Corp. v. Keating, 465 U.S.
1, 16, 104 S. Ct. 852, 861 (1984).  An
agreement such as the one here, which does not specify whether the parties intended
to arbitrate under either the FAA or the TGAA, and which would be unenforceable
under either the FAA or the TGAA because the signatory lacked the authority to
bind the principal to the agreement (and which would be unenforceable against
the signatory in her individual capacity because there is no evidence that she
signed any of the documents in her individual capacity), does not violate this
purpose.  Thus, we conclude and hold that
our jurisdiction of appellants= complaints extend to both the mandamus proceeding and the
interlocutory appeal.  See D. Wilson
Constr. Co., 196 S.W.3d at 780.

Having determined that
appellants failed to prove the existence of a valid agreement to arbitrate
because they failed to prove that Griffin had authority to bind Emmons or
anyone claiming by and through Emmons to the Resident and Facility Arbitration
Agreement, we hold that the trial court did not err by denying appellants= (1) motion to compel arbitration and (2) motion to abate the trial
court proceedings pending arbitration. 
Accordingly, we overrule appellants= sole issue on appeal.  We also
hold that appellants are not entitled to mandamus relief.

 








                                             Conclusion

We affirm the trial court=s interlocutory orders denying appellants= (1) motion to compel arbitration and (2) motion to abate the trial
court proceedings pending arbitration. 
We also deny appellants= petition for writ of mandamus.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and MCCOY, JJ.

 

DELIVERED:
May 24, 2007











[1]Appellants
initially filed the interlocutory appeal. 
Upon filing their petition for writ of mandamus, they requested that the
appeal and mandamus be consolidated.





[2]The
facility admission agreement did not contain any arbitration language; the only
agreement containing such language is the separate arbitration agreement,
entitled AResident
and Facility Arbitration Agreement.@





[3]Emmons
is listed in the body of the arbitration agreement as the AResident,
. . . or >Resident=s
Authorized Representative.=@





[4]Underneath
Griffin=s
signature, the responsible party is listed as Frances Emmons, and the
relationship as ASelf.@  Emmons=s address is also
listed.  In addition, Emmons is shown on
the first page of the admission agreement as the AResident=s
Responsible Party.@  It appears that the information regarding
Emmons was either typed onto the form or entered into the form on computer and
then printed for signature.  In contrast,
Cityview=s
admit/discharge record for Emmons lists Griffin as the AResponsible
Party@ and
Emmons=s
other daughters as emergency contacts.





[5]Section
74.451(a) provides as follows:

 

No
physician, professional association of physicians, or other health care
provider shall request or require a patient or prospective patient to execute
an agreement to arbitrate a health care liability claim unless the form of
agreement delivered to the patient contains a written notice in 10‑point
boldface type clearly and conspicuously stating:

 

UNDER
TEXAS LAW, THIS AGREEMENT IS INVALID AND OF NO LEGAL EFFECT UNLESS IT IS ALSO
SIGNED BY AN ATTORNEY OF YOUR OWN CHOOSING. THIS AGREEMENT CONTAINS A WAIVER OF
IMPORTANT LEGAL RIGHTS, INCLUDING YOUR RIGHT TO A JURY. YOU SHOULD NOT SIGN
THIS AGREEMENT WITHOUT FIRST CONSULTING WITH AN ATTORNEY.

 

Tex. Civ. Prac. & Rem. Code Ann. '
74.451(a) (Vernon 2005).      





[6]The
medical power of attorney fails to meet two other requirements of the statute:
(1) there is no evidence that Emmons was provided with the disclosure statement
required by section 166.162, which provides that a medical power of attorney is
not effective unless such a disclosure statement is provided; and (2) in
violation of sections 166.003(2)(f) and 166.154(a) of the health and safety
code, it appears that the two witnesses to the medical power of attorney were
employees of Cityview, or at least related in some way to Cityview, because
they listed their address as Cityview=s address.  Tex.
Health & Safety Code Ann. '' 166.003(2)(f), 166.154(a),
166.162.





[7]As we
discuss below, there is no evidence in the record as to whether Emmons was
present when Griffin signed these documents, nor is there any evidence that
Emmons was aware Griffin signed these documents.