

# NUMBER 13-09-00158-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MICHAEL ZELLERS, ET AL.,**                               **Appellants,**

**v.**

**CITY OF MCALLEN, TEXAS,**                                 **Appellee.**

### On appeal from 332nd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

This case involves a contract dispute between appellants, certain City of McAllen

police officers,[1] and appellee, the City of McAllen, Texas (the City), over alleged non-

---

[1]The appellants in this case are Michael Zellers, Efrain Alejandro, Juan Alvarez, Mario Ayala, Noe Canales, Arturo S. Casas, Guadalupe Cavazos, Ricardo Cepeda, Juan H. Chavez, Armando Contreras, Duane E. Cottrell, Jose V. Delgado, Santiago Galvan, Jose A. Garcia, Jose L. Garcia, Fernando Garza, Juan

payment of "stand-by" compensation. Appellants challenge the judgment rendered in favor of the City after a jury trial. By two issues, appellants complain that the trial court should have: (1) made a determination of whether a contract existed as a matter of law before submitting the case to the jury; and (2) enforced an alleged settlement agreement between the parties. We affirm.

## I. BACKGROUND[2]

On May 21, 2001, appellants sued the City for, among other things, breach of express and implied contract and quantum meruit. In their petition, appellants alleged that, through the City's 1983 Employee Manual and certain standard operating procedures promulgated by the city manager, the City contracted with appellants to compensate them for stand-by duty. "Stand[-]by duty," according to the petition, "mandates all employees, including the Police Department Officers, to comply with any supervisor [directive] required [sic] to 'report to work.' In that event[,] 'Stand[-]by pay' will be paid according to the policies established" by the city manager. Appellants alleged that while they were on stand-by duty, they "refrained from certain use of their time customarily adapted to personal and family matters" and were "restricted and confined . . . to be immediately available to respond to a call from any one of several police department supervisors." Appellants stated in their petition that they performed these stand-by duties, as ordered by their

---

J. Garza, Ramiro Gonzalez, Armando Hernandez, Lorenzo Lara, Fransisco Lopez, Scott M. Luke, Alberto M. Mata, Abel Mercado, Dwayne L. Miller, Joe Moroles, Ricardo Olvera, Fransisco Ortegon, Jose S. Palomo, Gene Potter, Reynaldo Rodriguez, Roman Rodriguez, Felipe Saenz Jr., Oscar Saldana, Carlos Jerry Salinas, Ruben Suarez, Abelardo Tijerina Jr., Luis Trevino, Eduardo Vela, Javier Vela, Heriberto Vigil, Andres Zamora, Humberto Zavala, and Robert Zepeda Jr.

[2]Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

supervisors, but have not been compensated for their time as purportedly agreed to by the City in its policies and procedures.

The City answered, and discovery and motion practice ensued for approximately seven years.[3] In their brief, appellants allege that the parties entered mediation in August 2008, and that a settlement agreement was reached. Our review of the record reveals a letter from the City's attorneys to appellants' attorney related to the alleged settlement. The letter is signed by the attorneys for both parties and provides:

> Dear [appellants' attorney]:
>
> This is to confirm that you and your clients have agreed to settle all claims in the above referenced cause of action for $788,961.49. This amount includes all court costs, expenses, disbursements and attorneys['] fees and all other damages whether compensatory or otherwise.
>
> In exchange for payment of this sum your clients will execute all release and settlement documents prepared by the City and dismiss their claims against the City of McAllen with prejudice. You and your clients understand that this is a recommendation for settlement and cannot be finalized until approved by the McAllen City Commission. If this settlement is approved it will be funded on or before October 15, 2008.
>
> This amount represents all monies that will be recommended to be paid in settlement. There will be no deductions or contributions for any obligations related to wages. Your clients will be required to indemnify the City for any claims and/or liabilities for any obligations or contributions. In exchange the City will dismiss its counterclaims against you [sic] clients.
>
> This letter represents a valid and enforceable Rule 11 agreement pursuant to the T.R.C.P.

(Footnote omitted.)

---

[3]The City filed motions for summary judgment in April and August 2005, which were denied by the trial court. In August 2006, the City filed a plea to the jurisdiction, which was also denied by the trial court; the City's interlocutory appeal of that denial was dismissed by this Court on March 1, 2007. *See City of McAllen v. Zellers*, 216 S.W.3d 913, 917 (Tex. App.–Corpus Christi 2007, pet. denied).

3

Appellants filed a motion to enforce the alleged settlement agreement on September 12, 2008. The trial court did not rule on the motion, and the parties proceeded to trial on the merits on October 21, 2008. After the close of evidence, the jury was asked the following two questions, with accompanying instructions, regarding liability:

Question No. 1 (Existence of contract)

Did the City of McAllen have a contract with its police officers and employees that agreed to pay for stand[-]by duty?

"Contract" means a written contract stating the essential terms of the agreement for providing goods and services to the City that was properly executed on behalf of the City.

A contract is formed when there is 1) an offer and 2) an acceptance, 3) a meeting of the minds, 4) each party's consent to the terms, and 5) execution and delivery of the contract.

1) An offer is a statement of the work requested and the payment offered for that work.

2) Acceptance may be shown if a person performs under the terms of the contract, such as accepting employment.

3) A meeting of the minds is based on what the parties said and did, and not on their after[-]the[-]fact statements.

4) A contract does not have to be signed to show consent. A party may show consent by its actions such as performing the services called for in the contract, or accepting the services that were the subject of the contract.

5) A contract may be composed of more than one writing.

6) The continued performance of the employees shows their acceptance of any terms applicable to them expressed in the handbooks.

. . . .

Question No. 2:

Did the City withhold payment for services that 1) were actually provided and that 2) should have been paid for?

4

The jury answered "No" to both questions as to all of the appellants and returned a verdict in favor of the City. This appeal followed.

## II. DETERMINATION OF CONTRACT

By their first issue, appellants contend that the "trial court is required to make a determination as a matter of law on the question of the existence of a contract." We acknowledge that this contention is a correct statement of the law in some circumstances because it is often true that a trial court must make determinations on certain questions surrounding contracts. *See, e.g., In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (holding that whether a contract is ambiguous is a question of law that the trial court must determine); *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.–Dallas 2005, no pet.) (holding that "[u]nder Texas law, if there is no ambiguity in a written contract, 'its construction and meaning become a question of law for the court to determine'"). However, it is also true that certain questions of contract formation depend on factual findings that are appropriate for a jury's determination. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (holding that the parties' intent in an ambiguous contract is a fact question for the jury); *United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968) (affirming a jury's finding that performance of a promised act constitutes valid acceptance); *Hirschfeld Steel Co., Inc. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 287-88 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (requiring that, where there is a dispute over the existence of a contract, the jury be questioned and instructed on the issue); *see, e.g.*, COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER,

5

INSURANCE, EMPLOYMENT PJC 101.1, 101.8, 101.11 (2008) (outlining the pattern jury charge and instructions regarding, respectively, contract existence when the existence of a contract is a disputed issue; jury's interpretation of an ambiguous contractual provision; and offer and acceptance, including a specific instruction on acceptance-by-performance).

Here, appellants appear to posit by their first issue that trial courts are required to determine all aspects of the existence, construction, and meaning of contracts before submitting the case to the jury. We disagree with this general and broad supposition. Our review of the record indicates that a question existed as to whether appellants' accepted the purported contract between appellants and the City by continued employment and performance of their duties and that the parties disputed, in general, the existence of the alleged contract. The trial court in this case was thus permitted to submit a question to the jury regarding general contract existence and formation through acceptance-by-performance, and we find no error in the court's decision to do so. *See United Concrete Pipe Corp.*, 430 S.W.2d at 364; *Hirschfeld Steel Co., Inc.*, 201 S.W.3d at 287-88; *see also* COMM. ON PATTERN JURY CHARGES, *supra*, PJC 101.1, 101.11.

Moreover, we disagree with appellants' apparent suggestion that the trial court failed to make any determination regarding the contract at issue in this case. To the contrary, by submitting to the jury a question regarding the formation of the contract between appellants and the City, the trial court determined that fact issues existed necessitating the jury's consideration and answer. *See Hirschfeld Steel Co., Inc.*, 201 S.W.3d at 287-88. Based on the foregoing, appellants' first issue is overruled.

### III. Settlement Agreement

In their second issue, appellants complain of the trial court's failure to enforce an alleged settlement agreement between the parties. Appellants allege that they reached an agreement with the City to settle the case after several days of mediation in August 2008, but that the City then reneged on the agreement. Appellants filed a motion with the trial court to enforce the settlement agreement on September 12, 2008. On appeal, appellants allege that the letter sent by the City's attorney to appellants' attorney is a valid rule 11 agreement, which they now seek to enforce. However, we have reviewed the record before us and find no ruling by the trial court on appellants' motion to enforce and no objection by appellants to the trial court's apparent failure to rule. *See* Tex. R. App. P. 33.1(a); *Estate of Veale v. Teldyne Indus., Inc.*, 899 S.W.2d 239, 242, 244 (Tex. App.–Houston [14th Dist.] 1995, writ denied) (holding that "the burden is on the complaining party to present a sufficient record to the appellate court to show error requiring reversal" and that, to complain on appeal of the trial court's failure to take a requested action, the record must reflect the complaint and the trial court's failure to grant it) (citations omitted). Because appellants neither obtained a ruling on their motion nor objected to the trial court's refusal, if any, to rule, they have failed to preserve for our review any issue regarding the alleged settlement agreement. *See* Tex. R. App. P. 33.1(a); *Kaufman v. Comm'n for Lawyer Discipline*, 197 S.W.3d 867, 874 (Tex. App.–Corpus Christi 2006, pet. denied) (holding that the appellant's failure to obtain a ruling from the trial court on the complained-of issue precluded appellate review). Appellants' second issue is therefore overruled.

## IV. Conclusion

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
20th day of May, 2010.